Tommie E. BURNETT and Peggie L. Burnett, Appellants–Plaintiffs,

v.

CINCINNATI INSURANCE COMPANY, Appellee–Defendant.

No. 87A04–9708–CV–343.

Court of Appeals of Indiana.

Jan. 23, 1998.

Rehearing Denied March 19, 1998.

Leslie C. Shively, Lee F. Baker, Fine & Hatfield, Evansville, for Appellants–Plaintiffs.

Jeffrey A. Doty, Brent R. Weil, Kightlinger & Gray, Indianapolis, for Appellee–Defendant.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Tommie and Peggie Burnett appeal the entry of summary judgment in favor of Cincinnati Insurance Company on the Burnetts' complaint for declaratory judgment. We affirm.

*ISSUE*

Whether the trial court properly applied the law to the undisputed facts.

*STATEMENT OF THE FACTS*

The Burnetts are owners of real estate in Newburgh. On June 10, 1995, the Burnetts incurred a loss as a result of a mine subsidence occurrence. At the time of the mine subsidence occurrence, the Burnetts had a homeowner's insurance policy issued by Cincinnati Insurance. The insurance policy contained an exclusion provision, which read in part as follows:

1. We will not pay for loss resulting directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

\* \* \* \*

b. Earth Movement meaning:

(1) Earthquake ...;

(2) mudflow, *earth sinking,* rising or shifting;

(3) volcanic eruption ...;

(4) Landslide; ...

We will pay for direct physical loss:

(1) by Fire, Theft, Explosion, or breakage of glass or safety glazing materials resulting from earth movement;

(2) to property described in Coverages A, B, and C under an Executive Policy or to property described in Coverage C under a Condominium Unit–Owners Special Form Policy....

(R. 53, 65) (emphasis added). The policy also contained an "Indiana Mine Subsidence Coverage Endorsement," which read in pertinent part as follows:

For an additional premium, we insure for direct physical loss to *structures* caused by *mine subsidence.*

The following definitions apply to this endorsement:

1. *Mine Subsidence,* meaning the collapse of inactive underground coal mines, abandoned before August 3, 1977, resulting in damage to *a structure* located in Indiana and covered under this policy. It does *not* include loss caused by:

(a) earthquake or earth movement, landslide or volcanic eruption; or

(b) collapse of storm or sewer drains.

All damage that is caused by: (1) a single *mine subsidence* event, or (2) two or more *mine subsidence* events that are continuous shall constitute one *mine subsidence* occurrence.

2. *Structure,* meaning a dwelling, building or fixture permanently affixed to real property. *Structure* does not include land, crops or other plants or a dwelling, building, or fixture that is owned by a public or governmental entity.

*Loss Settlement.* Losses covered by this endorsement will be settled as follows:

We will pay the smallest of the following amounts:

(a) $75,000 for each structure;

(b) the limit of liability applicable under this endorsement to the damaged property;

(c) the actual cash value at the time of loss of the damaged property; or

(d) the amount available in the Mine Subsidence Insurance Fund to reimburse us.

\* \* \* \*

The Earth Movement exclusion in this policy does not apply to loss caused by *mine subsidence.*

This endorsement does not increase the limits of liability stated in this policy and does not include the cost of filling land.

All other provisions of this policy apply.

(R. 64) (emphasis in original).

Following the mine subsidence occurrence, the Burnetts submitted a claim to Cincinnati Insurance. Cincinnati determined that the Burnetts were only entitled to the maximum amount of $75,000 under the mine subsidence endorsement of the insurance policy.[1] On June 7, 1996, the Burnetts commenced a declaratory action against Cincinnati Insurance, requesting that the trial court declare "coverage under the policy for the entire loss

---

1. The insurance claim submitted by the Burnetts to Cincinnati Insurance was not designated to the trial court.

incurred by the plaintiffs." (R. 10). Cincinnati filed an answer and counterclaim for declaratory judgment, requesting "a declaration that the coverage provided under its Indiana Mine Subsidence Coverage Endorsement is not illusory, that neither Cincinnati Insurance Company nor the Indiana Department of Insurance is required to return premium to the [Burnetts] for mine subsidence insurance coverage." (R. 41).

On November 7, 1996, Cincinnati moved for summary judgment. On April 17, 1997, the trial court entered summary judgment in favor of Cincinnati Insurance, making the following conclusions of law:

1. The Cincinnati policy contained an unambiguous limit of $75,000.00 per structure for mine subsidence losses.

2. Pursuant to the Cincinnati mine subsidence insurance endorsement, as well as the Indiana mine subsidence insurance statute, the plaintiffs are entitled to a maximum recovery of $75,000.00 for the June 10, 1995 mine subsidence loss at their home.

3. The plaintiffs are entitled to a maximum recovery of $75,000.00 under the Cincinnati homeowner's policy.

(R. 109–110).

### DECISION

Summary judgment is appropriate if the designated evidentiary material shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). On appeal, the reviewing court examines the same issues, and applies the same analysis as the trial court does. *Schrader v. Eli Lilly and Co.*, 639 N.E.2d 258, 261 (Ind. 1994), *reh'g denied.* When the parties do not dispute facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *O'Neal v. Throop*, 596 N.E.2d 984, 986 (Ind.Ct.App.1992), *trans. denied.* However, the party that lost in the trial court has the burden of persuading the appellate tribunal that the trial court's decision was erroneous. *Schrader*, 639 N.E.2d at 261.

On appeal, the Burnetts acknowledge that the structural damage to their residence caused by the mine subsidence is limited to $75,000 under the mine subsidence endorsement of the insurance policy. However, the Burnetts contend that "other provisions of the policy provide coverage to the Burnetts for non-structural damages." Appellant's Brief at 6. They then argue that "Cincinnati's failure to express in plain and unambiguous terms an exclusion of coverage for loss of or damage to personal property, loss of use of the residence, and costs explicitly excepted from the mine subsidence endorsement, should have been construed against it by the trial court." Appellant's Brief at 11.

Cincinnati Insurance responds that the Burnetts have waived this argument by their failure to offer a cogent argument on appeal. We agree with Cincinnati Insurance.

Ind.Appellate Rule 8.3 requires the appellant to support each contention with an argument, including citations to the authorities, statutes, and record for support. App.R. 8.3(A)(7); *Sturma v. State*, 683 N.E.2d 606, 610–611 (Ind.Ct.App.1997). Failure of a party to present a cogent argument in his or her brief is considered a waiver of that issue. *Id.*; *Anacomp, Inc. v. Wright*, 449 N.E.2d 610, 617 (Ind.Ct.App. 1983).

In the present case, the Burnetts assert that other provisions of the policy provide coverage "for direct loss of personal property, costs of repairs or replacement for personal property, and actual loss associated with the loss of use of the residence." Appellant's Brief at 10. However, the Burnetts make no citation to the record in support of their contention that they suffered non-structural losses. In fact, our review of the record reveals that the Burnetts did not designate any evidentiary material concerning non-structural losses. The Burnetts also do not identify the specific policy provisions which allegedly provide coverage for non-structural damage, and they offer no interpretation of these provisions to explain how or why such coverage applies. Therefore, the Burnetts have waived review of this issue.

 Waiver notwithstanding, the Burnetts argument is without merit. The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992). It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the trier of fact must determine the facts upon which the contract rests. *Id.* If insurance policy language is clear and unambiguous, it should be interpreted most favorably to the insured. *Id.* It should be construed to further the policy's basic purpose of indemnity. *Id.*

 Here, the Burnetts have not met their burden of persuading this court that the trial court's conclusion that the Burnetts were only entitled to the maximum coverage of $75,000 under the mine subsidence endorsement was erroneous. The insurance policy provides that Cincinnati Insurance will not pay for loss resulting directly or indirectly from earth movement, which includes "earth sinking." (R. 53, 65). The policy provides that mine subsidence means the "collapse of inactive underground coal mines." (R. 64). The Burnetts do not attempt to challenge the applicability of the earth movement exclusion to their mine subsidence loss.[2] Thus, the Burnetts have not shown that their mine subsidence loss was not excluded by the earth movement exclusion provision.

We affirm.

BARTEAU, J., and RATLIFF, Senior Judge, concur.

---

2. The major issue in dispute before the trial court was whether coverage of the Burnetts' mine subsidence loss was excluded under the earth movement exclusion provision of the policy. The Burnetts argued to the trial court that mine subsidence was not within the policy's definition of earth movement because it was not a naturally occurring phenomena. They do not make this argument on appeal.