**CONSOLIDATED SERVICES, INC., Plaintiff,**

v.

**KEYBANK NATIONAL ASSOC. and Keycorp, Defendants.**

**No. 3:98 CV 0014 AS.**

United States District Court, N.D. Indiana, South Bend Division.

Nov. 23, 1998.

James H. Milstone, Landau Omahana and Kopka, South Bend, IN, Robert J. Gallagher, Alan J. Howarth, Haydenville, MA, for Consolidation Services Inc.

Jeffery A. Johnson, Patricia E. Primmer, Wilmer Todd Woelfer, May Oberfell and Lorber, South Bend, IN, for Keybank National Association, Keycorp.

## MEMORANDUM AND ORDER

SHARP, District Judge.

This cause is before the Court on Defendants' Motion for Summary Judgment. Both parties have fully briefed the issues and the Court has considered same.[1] Additionally, the Court heard oral argument on October 19, 1998. Plaintiff, Consolidated Services, Inc. (CSI), is an Indiana corporation with its principal place of business in South Bend, Indiana. Defendant, Keybank National Association (Keybank), is a corporation existing under a charter filed with the Comptroller of the Currency in Washington, D.C. with its principal place of business in Cleveland, Ohio. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

## BACKGROUND

This case arises from a dispute over the terms of a credit agreement entered into between Plaintiff and Defendant. CSI is a federally licensed freight forwarder. From 1974 until 1994, CSI maintained a business relationship with St Joseph's Bank. In 1994, the bank was bought by Society National Bank and in 1995 the name was changed to KeyBank National Association.

In 1994, CSI decided to expand is business into the "intermodal" method of transportation. In order to do so, CSI requested an eight million dollar line of credit through Keybank. This request was denied. However, in part due the long working relationship between CSI and the bank, Society National agreed to extend 2.7 million dollars as an "interim loan" to Leonard and Sylvia Kanczuzewski, the principal shareholders of CSI. The loan was to provide a six-week interim in which CSI was to secure alternate financing. It was made on August 16, 1994 and was to mature on September 30, 1994. Because CSI was unable to secure its alternate financing within the expected time the loan was extended twice by mutual agreement of the parties. The last extension ended December 31, 1994. As of January 12, 1995, the loan was unpaid. Keybank sent a letter to CSI demanding payment of the balance and agreeing to forbear from collection efforts until February 15, 1995 if CSI met eight conditions as set forth in the letter. (Def's App. N)

1. This Court does not exist to grade lawyers' papers. The sequence of relevant events was difficult to follow in the parties' briefs due to numerous errors in dates which remained even after the parties submitted corrections. Additionally, all counsel would benefit from a review of proper citation form.

Kanczuzewski contends that he crossed out one of the conditions and then signed and returned the letter to Keybank on January 30, 1995. He asserts that this letter was a contract and that by signing and returning it he accepted the terms. Keybank and Kanczuzewski met with counsel present on January 17 at which time the bank allegedly agreed to provide a forbearance until February 15, 1995 and to withhold action on several of the items requested in the January 12 letter until January 27, 1995. On January 20, 1995, Keybank sent a second letter to CSI in which it specifically stated that it agreed to withhold action on three items until January 27, 1995.[2] (Def's App. O) The letter also made clear that if CSI was unable to close a loan pending with Comerica by such time those three items would be due immediately. The letter reiterated that Keybank would only forbear from enforcing its rights in connection with the original loan until February 15, 1995. The Comerica loan did not close and as of February 14, 1995, CSI had not contacted Keybank or made any payments on its outstanding loan. Additionally, CSI had not complied with the three requirements that were due immediately if the Comerica loan did not close. Accordingly, Keybank called CSI to schedule a meeting for the following day, February 15, 1995. From this point on the facts are in dispute.

A meeting took place at approximately 3:00 pm on February 15. According to Kanczuzewski, Keybank offered CSI a forty-five day extension of the forbearance in exchange for four conditions being met by Kanczuzewski.[3] Kanczuzewski claims he immediately complied with the conditions offered by Keybank at the meeting. In spite of his compliance, Kanczuzewski alleges that on February 22, 1995, Keybank breached the February 15 agreement and withdrew approximately 1.175 million dollars from CSI's account to apply toward the principle of the outstanding loan. Kanczuzewski also alleges that Keybank breached its oral promise to continue to pay freight charges CSI owed to Santa Fe Rail-

way. Said charges were paid at the end of each week as part of the ongoing regular course of business. According to Kanczuzewski, because the bank refused to honor the alleged agreement, did not cover the freight charges and demanded immediate payment of the loan CSI was forced into bankruptcy.

Not surprisingly, Keybank's version of these facts differs. Keybank adamantly denies that it offered an additional forty-five day extension to its forbearance. It agrees that it made a proposal to CSI that included four requirements, however, Keybank claims that Kanczuzewski refused the offer. (McGraw Dep. p. 63–69) At 5:00 p.m. on February 15, 1995, the forbearance period ended and the funds in the cash collateral account were applied to the outstanding loan. CSI and Keybank continued to negotiate after this occurred. CSI asked Keybank to return $800,000.00 of the funds taken so that CSI could operate through the following Tuesday, at which time it would provide a plan for liquidation to the bank. In exchange for two mortgages as collateral the bank agreed to return the requested monies to CSI until Tuesday. On Wednesday, February 22,1995 another meeting was held. Keybank asserts that no agreement was reached by the parties on that day and no liquidation plan was submitted. Because the forbearance had expired on February 15 and no new agreement was in place Keybank pursued the cash collateral.

CSI filed Chapter 11 bankruptcy in April, 1995. Subsequently, on January 8, 1998, CSI filed suit against Keybank alleging breach of contract, promissory estoppel, constructive fraud, breach of covenant of good faith and fair dealing and, failure to execute a payment order pursuant to Indiana statute. On July 1, 1998, Keybank filed this Motion for Summary Judgment as to all claims.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories

---

2. Keybank agreed not to require the execution of CSI's mortgages as collateral, require the cash collateral account, and agreed not to establish the borrowing base requirement set forth in its earlier letter, January 12, 1995.

3. These conditions were: 1) a $500,000 pay down on the current loan; 2) cross-collateralization of all debts and leases; 3) CSI must provide the two mortgages previously sought for collateral; 4) set up a lock box for CSI's receivables to be collected directly by Keybank.

and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[4] Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).[5] The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56); *Essex v. United Parcel Serv., Inc.,* 111 F.3d 1304, 1308 (7th Cir.1997). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue.[6] *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts shows that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Wintz v. Northrop Corp.,* 110 F.3d 508, 512 (7th Cir.1997) *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 920–21 (7th Cir. 1994), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Valance v. Wisel,* 110 F.3d 1269, 1274 (7th Cir.1997); *Patel v. Allstate Insurance Co.,* 105 F.3d 365, 367 (7th Cir.1997). However, despite a conflict in facts and inferences on some elements of a claim, summary judgment is appropriately entered when no dispute exists with regard to facts which are dispositive of the litigation. *Ohio Valley Plastics, Inc. v. National City Bank,* 687 N.E.2d 260, 262 (Ind. Ct.App.1997), *trans. denied.* Applying this standard the Court addresses Defendant's motion.

## DISCUSSION

The sole issue in the present case is whether the terms of the original loan contract were modified at the February 15, 1995 meeting to guarantee CSI an additional forty-five day forbearance extension and if so, does the Statute of Frauds apply? Interpreting the facts in the light most favorable to CSI and assuming, *arguendo,* that an oral modification to the terms of the original agreement was made at the February 15 meeting, CSI's claims still fail.

### A. INDIANA LENDER LIABILITY STATUTE

Indiana law requires that credit agreements be in writing. The Indiana Code provides:

A debtor may bring an action upon a credit agreement only if the agreement:

(1) *is in writing;*

(2) sets forth all material terms and conditions of the credit agreement, including the loan amount, rate of interest, duration, and security; and

(3) is signed by the creditor and the debtor.

Ind.Code.Ann. § 32–2–1.5–4 (Burns Supp. 1991) (emphasis added). Moreover, the statute explicitly states that a debtor may bring an action upon a credit agreement with a creditor to enter into a new credit agreement, amend or modify a prior credit agreement, forbear from exercising rights under a prior credit agreement, or grant an extension under a prior credit agreement only if the above three conditions are satisfied. *Id.* at § 32–2–1.5–5.

---

4. For purposes of review, the incomplete sections of various depositions provided by the parties without the full context were of limited assistance to this Court.

5. A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475

U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

6. Neither party disputes that the Indiana Lender's Liability Statute, I.C. §§ 32–2–1.5–1 through 32–2–1.5–5, applies in this case.

The relevant statute was enacted in 1989 and to date there are only two published cases applying it. *See Paulson v. Centier Bank*, 704 N.E.2d 482, 1998 WL 754455 (Ind. App.1998); *see also, Ohio Valley Plastics*, 687 N.E.2d 260. Numerous other states have adopted similar provisions. The statutes that have been drafted have either been in the form of amendments to the Statute of Frauds (as in Indiana) or so-called Credit Agreement Statutes.[7] However, even in those states there is very little published case law applying the statutes.

■ When interpreting a statute the foremost objective is to determine and effect legislative intent. *Ohio Valley Plastics*, 687 N.E.2d 260, 263; *JKB, Sr. v. Armour Pharm. Co.*, 660 N.E.2d 602 (Ind.App.1996). Courts must give deference to such intent whenever possible. *Id.* In analyzing the facts in the current case there is no doubt that even if an agreement was reached on February 15, 1995, that agreement was either a modification of the prior agreement, or was a new agreement. The substance of the current dispute is that of an action upon an agreement by a bank to loan money. As such, it clearly falls within the confines of the Indiana Lender Liability Statute. Therefore, to be enforceable, the February 15 agreement had to be in writing. Because it was not, CSI's claims are barred by the Indiana statute.[8] In an effort to circumvent this result CSI argues that even though the statute applies the agreement is excepted due to constructive fraud, promissory estoppel and Keybank's breach of contract.

## B. EXCEPTIONS TO THE STATUTE OF FRAUDS

The purpose of the Statute of Frauds is to preclude fraudulent claims which would probably arise when one person's word is pitted against another so as to open wide those ubiquitous floodgates of litigation. *Ohio Valley Plastics*, 687 N.E.2d 260, 263 (quoting *Summerlot v. Summerlot*, 408 N.E.2d 820, 828 (Ind.Ct.App.1980)). While it is true that certain conditions will remove an action from the Statute of Frauds, none of the exceptions apply here.

### 1. Part Performance/Promissory Estoppel

■ CSI asserts that because it partially performed the agreement when it tendered

7. For additional states enacting similar statutes see Ala.Codes § 8–9–2(7) (Supp.1991) (effective May 3, 1989); Alaska Stat. § 09.25.010(a)(13) (Supp.1991) (effective Aug. 9, 1989); Ariz.Rev. Stat.Ann. § 44–101(9) (Supp.1991) (approved 1989); Ark.Code Ann. § 4–59–101(d)(e) (Michie Supp.1991) (effective Mar. 14, 1989); Cal.Civ. Code § 1624(g) (West Supp.1991) (effective Jan. 1, 1990); Colo.Rev.Stat. § 38–10–124 (Supp. 1991) (effective Mar. 15, 1989); Conn.Gen.Stat. Ann. § 52–550(a)(6) (West Supp.1991) (approved 1989); Del.Code Ann. tit. 6, § 2714(b) (Supp. 1990) (effective Mar. 29, 1990); Fla.Stat.Ann. § 687.0304 (West 1990) (approved 1989); Ga. Code Ann. § 13–5–30(7) (Michie Supp.1991) (effective July 1, 1988); Haw.Rev.Stat. § 656–1(8) (Supp.1991) (effective Jan. 1, 1990); Ill.Ann.Stat. ch. 17, paras. 7101–03 (Smith–Hurd Supp. 1991) (effective Sept. 1, 1989); Iowa Code Ann. § 535.17 (West Supp.1991) (effective Jan. 1, 1991); Kan.Stat.Ann. §§ 16–117 to –119 (1988) (effective Mar. 9, 1989); Ky.Rev.Stat.Ann. § 371.010(9) (Michie/Bobbs–Merrill Supp.1990) (effective July 13, 1990); La.Rev.Stat.Ann. §§ 6:1121–23 (West Supp.1991) (approved 1989); Md.Cts. & Jud.Proc.Code Ann. § 5–317 (1989) (effective July 1, 1989); Minn.Stat. § 513.33 (1990) (effective May 29, 1985); Mo. Ann.Stat. § 432.045 (Vernon Supp.1991) (approved 1990); Neb.Rev.Stat. §§ 45–1,112 to 1,115 (Supp.1990) (effective July 10, 1990); Nev. Rev.Stat.Ann. § 111.220(4)–(5) (Michie Supp. 1991) (effective May 10, 1989); N.J.Stat.Ann. § 25:1–5 (effective Apr. 4, 1991); N.M.Stat.Ann. § 58–6–5 (Michie 1991) (effective Mar. 1, 1990); N.C.Gen.Stat. § 22–5 (Supp.1991) (effective Oct. 1, 1989); N.D.Cent.Codes § 9–06–04(4)–(5) (Supp.1991) (approved 1985; amended 1991); Okla.Stat.Ann. tit. 15, § 140 (West Supp.1992) (effective May 8, 1989); Or.Rev.Stat.Ann. § 41.580(1)(h) (Butterworth Supp.1990) (effective Oct. 3, 1989); S.D. Codified Laws Ann. § 53–8–2–(4) (1990) (approved 1985); Tenn. Code Ann. § 29–2–101(b) (Supp.1991) (approved 1989); Tex.Bus. & Com.Code Ann. § 26.02 (West Supp.1991) (effective Sept. 1, 1989); Utah Code Ann. § 25–5–4(6) (Supp.1991) (effective Apr. 24, 1989); Va.Code Ann. § 11–2.9 (Michie Supp. 1991) (approved 1990); Wash.Rev.Code Ann. §§ 19.36.110 to .140 (West Supp.1991) (effective July 1, 1990).

8. The Court notes that CSI attempts to claim that all essential elements were reduced to writing. Apparently, CSI relies on several prior writings such as the original loan, the January 12 letter and the January 20 letter. Even if the Court agreed with this interpretation, the fact remains that one essential condition was not reduced to writing. The forbearance was expressly extended *only* until January 27, 1995. There were no further writings extending the forbearance.

the mortgages as collateral and paid $500,000 of the loan the Statute of Frauds is inapplicable. This assertion is unpersuasive.

Promissory estoppel is an equitable remedy devised to alleviate the harsh consequences resulting from strict adherence to contract law where there is detrimental reliance. Daniel A. Farber & John H. Matheson, Beyond Promissory Estoppel: Contract Law And The "Invisible Handshake", 52 U.Chi.L.Rev. 903, 904 (1985). The Seventh Circuit addressed the issue of partial performance in *Luson Int'l Distributors, Inc. v. Mitchell*, 939 F.2d 493 (7th Cir.1991). There, the Court commented on *Tolliver v. Mathas*, 538 N.E.2d 971 (Ind.Ct.App.1989) and acknowledged that Indiana law provides that an "oral contract for the sale of land may be removed from the Statute of Frauds by the doctrine of part performance." *Luson*, 939 F.2d at 498. However, the Court refused to extend the exception to apply to cases outside the context of an oral promise to sell real estate. *Id.* The Court stated that such a decision would eviscerate the protections provided by the Statute of Frauds. *Id.* The Court also noted the lack of any trend toward embracing the holding in *Tolliver* and stated that "the great weight of Indiana case law holds that the mere nonperformance of an oral promise which falls within the scope of the Statute of Frauds does not constitute such a fraud as would warrant the intervention of a court of equity." *Id.* Similarly, this Court sees no reason to extend the application of such an exception to include the current set of facts.

### 2. Constructive Fraud

CSI also asserts a claim of constructive fraud based on the fact that Keybank's fraud does not arise from the promise in the oral agreement but instead is based on a misrepresentation independent of the oral agreement. It is CSI's position that the fraud claim arises from Keybank's promise to wire payment of freight charges to Santa Fe Railway and its failure to honor that promise.

■ Constructive fraud consists of: 1) a duty existing by virtue of the relationship between parties; 2) representations or omissions made in violation of that duty; 3) reliance thereon by the complainant; 4) injury to the complainant as a proximate result

thereof, and 5) the gaining of an advantage by the party charged. *Paulson*, 1998 WL 754455 at *5, 704 N.E.2d 482, ——. Additionally, a claim of estoppel or fraud will not operate to remove a case from the statute of frauds where the promise relied upon is the very promise that the statute declares is unenforceable if not in writing. *Ohio Valley Plastics*, 687 N.E.2d 260.

■ CSI is attempting to assert that Keybank should have conducted "business as usual" in spite of CSI's failure to adhere to the terms of the loan agreement. When Keybank called in the loan it had no duty to pay out any monies on behalf of CSI. The promise relied upon (pay Santa Fe while extending the forbearance) is the very type of promise the Indiana statute declares is unenforceable unless in writing. Moreover, even if the Court found that the promise to pay Santa Fe was an independent agreement, it is still one that must be in writing pursuant to I.C. 32-2-1.5-1 as it was a "financial accommodation" the bank was making on CSI's behalf. Furthermore, the bank loaned a large sum of money to CSI and received only partial repayment. It did not gain any advantage or withhold anything to which it was not entitled under the terms of the credit agreement. *Luson*, 939 F.2d 493; *Voris v. Star City Bldg. & Loan Ass'n*, 20 Ind.App. 630, 50 N.E. 779 (Ind.App.1898) (no exception to Statute of Frauds unless promisor received consideration for promise that provided a "personal, immediate and pecuniary interest in the transaction"). Moreover, while Indiana courts have permitted the recovery of reliance damages under the doctrine of promissory estoppel even where a Statute of Frauds operates to render an oral agreement unenforceable the exception has been limited to oral employment agreements, not credit agreements. *See Ball v. Cox*, 7 Ind. 453 (1856); *Summerlot*, 408 N.E.2d at 828; *see also, Bower v. Jones*, 978 F.2d 1004 (7th Cir.1992).

### 3. Equitable Estoppel

■ Finally, CSI argues that equitable estoppel removes the agreement from the statute of fraud because Keybank promised to reduce the agreement to writing and failed to

do so. The refusal of a party to a contract to fulfill his promise to put it in writing is not such a fraud as will take the contract out of the statute of frauds. *Caylor v. Roe*, 99 Ind. 1 (1884); *Caldwell v. School City of Huntington*, 132 Ind. 92, 31 N.E. 566 (1892) (must allege defendant fraudulently prevented reduction of contract to writing in order to take case out of the statute of frauds). The allegations in the present case are insufficient and the facts do not support such a claim here.

## CONCLUSION

For the preceding reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED** in its entirety.

IT IS SO ORDERED.