**PARK HOOVER VILLAGE CONDOMINIUM ASSOCIATION, INC., Park Hoover Village Condominium Association Board of Directors, and Park Hoover Village Condominium Election Committee, Appellants–Respondents,**

v.

**ARDSLEY/PARK HOOVER LIMITED PARTNERSHIP, Ardsley Realty Corporation, and Jane Yale, Appellees– Petitioners.**

No. 49A04–0106–CV–268.

Court of Appeals of Indiana.

April 9, 2002.

Rehearing denied May 22, 2002.

Lawrence T. Newman, Indianapolis, IN, Attorney for Appellants.

Thomas F. Shea, Barnes & Thornburg, Indianapolis, IN, Attorneys for Appellees.

## OPINION

FRIEDLANDER, Judge.

Park Hoover Village Condominium Association, Inc., its Board of Directors, and its Election Committee (referred to collectively as "the Association") appeal the trial court's granting of a temporary restraining order and subsequent permanent injunction requiring the Association to place Jane Yale on the ballot as a candidate for its annual Board of Directors election.[1] The Association presents the following restated issues for review:

1) Did the trial court err by denying the Association's motion to dismiss for lack of subject-matter jurisdiction?

2) Is Yale an eligible candidate for the Board pursuant to the By–Laws of the Association?

3) Did the trial court err in dismissing the Association's counterclaim?

We affirm.

Park Hoover Village Condominiums (Park Hoover) is a community of 162 units, located at 6442 Park Central Way in Indianapolis. Ardsley Park Hoover, Limited Partnership (Ardsley Park Hoover) is an Indiana limited partnership with Ardsley Realty Corporation (Ardsley Realty), an Indiana corporation, serving as its general partner.[2] Jane Yale is the Secretary of Ardsley Realty. In October 2000, Ardsley Park Hoover owned twenty-eight units at Park Hoover.

The Association is an Indiana not-for-profit corporation, consisting of all unit owners at Park Hoover. Each fall, the Association conducts an election of its Board of Directors (the Board). On September 11, 2000, notice of the annual election was sent to unit owners. Yale was timely nominated as a candidate for the Board. On September 25, the same day ballots were mailed to unit owners, the Association's attorney sent a letter to Yale, via certified mail to Yale's attorney, advising her that she could not be placed on the ballot because she was not "a record owner of a Park Hoover Village Condominium unit as is required for eligibility pursuant to the governing documents of the Condominium." *Appellant's Appendix* at 250. The ballot was issued without Yale being listed as a candidate. Yale immediately responded in writing, advising that the Association's action was contrary to the By–Laws and demanding that a revised ballot be issued. The Association refused

---

1. Oral argument was held in Indianapolis on March 4, 2002. We commend counsel for their high quality briefing and excellent argument before the court.

2. The Association briefly argues that Ardsley Park Hoover is no longer a limited partnership because it dissolved as a matter of law on or about April 26, 2000, when the ten-year period of existence set forth in its certificate

of limited partnership expired. The Association admitted, however, in its answer to Yale's complaint that Ardsley Park Hoover is a limited partnership. Thus, the issue of Ardsley Park Hoover's legal form was closed in the pleadings. Furthermore, the precise legal form of the partnership is not determinative in this case.

to place Yale on the ballot for the election scheduled for October 10, 2000.

On October 4, Ardsley Park Hoover, Ardsley Realty, and Yale (referred to collectively as "Yale") filed their Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunction, and Declaratory Relief against the Association, asking the trial court to stop the scheduled election, declare Yale eligible, and order the Association to include her on the ballot. That same day, the trial court entered a temporary restraining order, prohibiting the Association from proceeding with the scheduled election. The Association filed a counterclaim for damages and attorney fees, alleging the temporary restraining order was wrongfully issued. The Association later filed a motion to dismiss for lack of subject-matter jurisdiction.

On April 16, 2001, the trial court held a hearing on Yale's complaint for permanent injunction and declaratory relief. Thereafter, on May 10, the trial court denied the Association's motion to dismiss. On May 23, the court issued its Findings of Fact, Conclusions of Law, and Order of Judgment, granting the relief sought by Yale and dismissing the Association's counterclaim. The Association now appeals.

1.

The Association initially argues that the trial court lacked subject-matter jurisdiction in this case. Relying on *Givens v. Superior Ct. of Marion County*, 233 Ind. 235, 117 N.E.2d 553 (1954), and its progeny, the Association contends that it is a voluntary association and, as such, the courts cannot interfere with its internal affairs, absent fraud, illegality, or abuse of civil or property rights having their origin elsewhere.

In *Givens*, members of a voluntary trade union sought injunctive relief to force the acting officers to hold an election and place certain names as candidates on the ballot. Our supreme court held that the trial court lacked subject-matter jurisdiction to interfere with the election, explaining:

A voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

As a general rule courts will not interfere to control the administration of the constitution and by-laws of such association, or to enforce rights springing therefrom.

The jurisdiction and power of courts of equity to issue restraining orders is limited to the protection of civil and property rights.

\* \* \*

The duty sought to be enforced is not one prescribed by the laws of the State of Indiana, but is one enjoined only by the constitution of the association (union).

\* \* \*

Any attempt by the courts to compel the officers of the union to perform their duties pertaining to the election of officers, which duties are enjoined solely by the constitution of the union, would be an unlawful interference with, and a regulation of, its internal affairs.

*Id.* at 238–39, 117 N.E.2d at 555 (citations omitted).

Our supreme court has recently applied *Givens* in the context of a not-for-profit corporation. In *IHSAA v. Reyes*, 694 N.E.2d 249 (Ind.1997), the court held that, as to member schools, the Indiana High

School Athletic Association (IHSAA) is a voluntary membership association subject to the following rule:

> Absent fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts will not interfere in the internal affairs of voluntary membership association. This means, *inter alia,* that Indiana courts will neither enforce an association's interpretation or application of its rules.

*Id.* at 256 (citations omitted). The rule has also been applied in other settings involving not-for-profit corporations where membership is voluntary. *See e.g., Lozanoski v. Sarafin,* 485 N.E.2d 669 (Ind.Ct. App.1985) (church), *trans. denied; Orchard Ridge Country Club, Inc. v. Schrey,* 470 N.E.2d 780 (Ind.Ct.App.1984) (country club).

█ In the instant case, however, we do not believe the Association constitutes a voluntary membership association. Initially, we observe that membership in the Association is required upon ownership of a unit at Park Hoover.[3] This is not a situation in which one directly seeks, or is accepted into, membership in the organization as a matter of choice. Rather, ownership compels membership, and members are free to depart from the Association and discontinue paying dues only by transferring title of their condominium unit.

*See* Ind.Code Ann. § 32–1–6–24(a) (West 2001) ("[a]ll sums assessed by the association of co-owners but unpaid for the share of the common expenses chargeable to any condominium unit shall constitute a lien from time of assessment on such unit"); *Lynn v. Windridge Co–Owners Ass'n, Inc.,* 743 N.E.2d 305 (Ind.Ct.App.2001) (holding that unit owners whose voting rights were suspended still were required to pay condominium association fees), *trans. denied.* Thus, unit owners have a legally cognizable property interest that is, in a sense, captive to the Association.

Moreover, a condominium association is simply not the type of voluntary association envisioned by cases such as *Givens* and *Reyes.* Here, not only is membership a necessary characteristic of the condominium form of ownership, but this form of property ownership is specifically created by and subject to the Horizontal Property Act.[4] *Cf. Givens v. Superior Ct. of Marion County,* 233 Ind. 235, 117 N.E.2d 553 (involving association with no statutory direction, where election duties were enjoined solely by the constitution of the union). We conclude that the trial court had jurisdiction to consider this case.

2.

The Association next challenges the trial court's judgment on the merits.[5] It as-

---

3. Article V, Section 1, of the Association's Articles of Incorporation provides in part:

   The members of the Association shall consist of all of the Owners of Units at Park Hoover Village Condominium.... Change of membership in the Association shall be consummated by the transfer of title to a Unit. The share of a member in the funds and assets of the Association cannot be assigned, hypothecated, or transferred in any manner, except as an appurtenance to a member's Unit.

   *Appellants' Appendix* at 66.

   The By-Laws, paragraph 2, similarly provide:
       The members of this Association shall be ... all subsequent Unit Owners in Park

   Hoover Village Condominium. Membership in the Association shall be an appurtenance to ownership of a Unit of the Condominium and shall be automatically transferred upon the transfer of a Unit. *Appellants' Appendix* at 117.

4. IC § 32–1–6–1 to –31. We further note that the By–Laws, paragraph 6, specifically refer to the Horizontal Property Act when discussing the powers and duties of the Board. *Appellants' Appendix* at 123–25.

5. The Association points to several alleged errors in the trial court's findings of fact. Many of these findings deal with Yale's expe-

serts that under the By–Laws, Yale is not an eligible candidate for the Board. Essentially, the Association contends that the only way a limited partnership, such as Ardsley Park Hoover, can be represented on the board is through a partner, as long as the partner is *an individual.* In other words, if all of the partners are corporations or other business entities, the partnership cannot have an officer of one of the partners seek election to the Board.

■ The articles of incorporation and by-laws of a not-for-profit corporation constitute a contract between the corporation and its members and among the members themselves. *Lynn v. Windridge Co–Owners Ass'n, Inc.,* 743 N.E.2d 305.

Construction of the terms of a written contract is a pure question of law for the court and we conduct a de novo review of the trial court's conclusions in that regard. If a contract is ambiguous because of the language used in the contract, rather than because of extrinsic facts, its construction is a pure question of law to be determined by the court. *Grandview Lot Owners Ass'n, Inc. v. Harmon,* 754 N.E.2d 554, 557 (Ind.Ct.App. 2001) (citation omitted). "The primary and overriding purpose of contract law is to ascertain and give effect to the intentions of the parties." *Indiana–American Water Co., Inc. v. Town of Seelyville,* 698 N.E.2d 1255, 1259 (Ind.Ct.App.1998).

■ In the instant case, paragraph 4 of the By–Laws reads in relevant part:

(a).... After the first annual meeting, the Board of Directors shall consist of five (5) persons, all of whom shall be Unit Owners, or, in the event any Unit be owned

by a partnership, corporation, or fiduciary, such person shall be a partner, officer of the corporation, or the fiduciary or officer of the fiduciary, as the case may be.

*Appellants' Appendix* at 120. The By–Laws incorporate the Horizontal Property Act:

15. *Compliance with Statute.*

These By–Laws are set forth to comply with the requirements of the [Horizontal Property Act], as it may be amended from time to time. In case any of these By–Laws conflict with provisions of said statute, it is hereby agreed and accepted that the provisions of the statute will apply.

*Appellants' Appendix* at 133. The definitions in the Horizontal Property Act are also expressly incorporated pursuant to paragraph 2 of the Declaration.

The Declaration, paragraph 2(i), defines "Unit Owner" as "the person or persons holding title in fee simple to a Unit." *Appellants' Appendix* at 81. The Horizontal Property Act further defines "Co-owner" and "Person" broadly so as to allow ownership of condominium units by any legal entity, or any combination thereof:

(e) "Co-owner" means a person who owns a condominium unit in fee simple and an undivided interest in the common areas and facilities in the percentage specified and established in the declaration.

(p) "Person" means an individual, firm, corporation, partnership, association,

rience in property management and on condominium boards. Because such findings are not relevant to the issue at hand, we need not address the alleged errors. Further, we are

aware that several of the court's findings of fact, in reality, constitute conclusions of law. In those instances, we will consider them as if they were denominated as such.

trust or other legal entity, or any combination thereof.

IC § 32-1-6-2.

Reading the By-Laws together with the definitions supplied by the Act, it is evident that a unit owner may be any combination of individuals, firms, corporations partnerships, associations, trusts, or other legal entities. While not delineating each of the possible ownership configurations, the clear intent of paragraph 4 of the By-Laws is to allow such entities the opportunity to be represented on the Board. We decline the Association's invitation to read the provision so narrowly as to refuse representation to an owner of twenty-eight units simply because the general partner is a corporation rather than an individual. The trial court correctly determined that Yale, as an officer of the general partner, was an eligible candidate for the Board and entitled to the relief sought.

### 3.

Finally, the Association challenges the trial court's dismissal of the Association's counterclaim for damages, including attorney fees, on the basis that it was wrongfully enjoined from holding the election by the issuance of the temporary restraining order. In light of our conclusion that injunctive relief was properly granted, we find no error in the trial court's dismissal of the Association's counterclaim.

Judgment affirmed.

VAIDIK and BARNES, JJ., concur.