**GARY/CHICAGO AIRPORT BOARD OF AUTHORITY, Appellant,**

v.

**Charles MACLIN, Appellee.**

**No. 45A03–0202–CV–61.**

Court of Appeals of Indiana.

July 26, 2002.

Darnail Lyles, Gary, IN, Attorney for Appellant.

Clorius L. Lay, Gary, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Gary/Chicago Airport Board of Authority (the "Board") appeals from the trial court's entry of summary judgment and award of attorney's fees in favor of Charles Maclin. The Board presents two issues on appeal:

1. Whether the trial court erred when it granted Maclin's motion for summary judgment.

2. Whether the trial court abused its discretion when it ordered the Board to pay Maclin's attorney's fees and costs.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 25, 2000, Clorius Lay, counsel for Maclin, attended a meeting of the Board. The public notice for the Board meeting stated, in part:

1. *CALL TO ORDER—9:30 A.M.— EXECUTIVE SESSION*
 A. FOI [Freedom of Information Act] Request Letter
 B. Legal Matters

The following day, Lay, on behalf of Maclin, sent a letter by facsimile to Indiana Public Access Counselor Anne Mullin O'Connor. In the letter, Lay requested that Counselor O'Connor "consider and accept this fax as Mr. Charles Maclin's formal complaint pursuant to Indiana Code [Section] 5–14–5–7." In the remainder of the letter, Lay alleged that the Board's public notice announcing the executive session violated provisions of Indiana's Open Door Law, Indiana Code Section 5–14–1.5–1 *et seq.*, because the public notice failed to identify by specific statutory reference the topics to be discussed during the executive session.[1] On October 31, 2000, Counselor O'Connor sent Lay a facsimile which stated in relevant part:

> I just wanted to let you know that the two most recent written "complaints" are being handled as informal because a formal complaint form was not included. For all intents and purposes, the impact is the same (if a lawsuit is filed and plaintiff prevails, attorneys fees and costs are awarded).

The next day, on November 1, 2000, Maclin filed his Complaint against the Board alleging that the Board's October 25, 2000, public notice announcing the executive session violated the Open Door Law. Maclin sought injunctive and declaratory relief, in addition to attorney's fees and costs.

On May 18, 2001, Maclin moved for summary judgment. He filed a Motion for Partial Summary Judgment with Memorandum of Law and later filed a Corrected Copy of Memorandum of Law with exhibits and an Affidavit in Support of Partial Motion [sic] for Summary Judgment with exhibits. The Board did not file a response.

During the summary judgment hearing, the Board appeared and presented argument. In particular, the Board made an oral motion asking the trial court to strike Maclin's affidavit because it was not based on personal knowledge. The Board also admitted that it had committed "technical" violations of the Open Door Law but claimed it had corrected those violations and, therefore, that Maclin's summary judgment motion was moot.

In an Amended Order of July 25, 2001, the trial court denied the Board's oral request to strike Maclin's affidavit and granted Maclin's Motion for Partial Summary Judgment. The court's order provided, in relevant part:

> The Court declares that the challenged actions of the defendant violated I.C. 5–14–1.5 *et seq.* Further, the Defendant, Gary/Chicago Airport Authority is directed to hence forth [sic] issue notices of Executive Sessions in compliance with I.C. 5–14–1.5–6.1(B), and further record and maintain a Memorandum of all matters taken up in the noticed Executive Sessions. Finally, the Defendant ... is directed to certify all Executive Sessions and approve same by separate vote pursuant to the statute.

---

1. In his letter, Lay cited to Indiana Code Section 5–14–1.5–6, which is the section of the code governing executive sessions. But the legislature repealed that section in 1991 and replaced it with Indiana Code Section 5–14–1.5–6.1.

The court also ordered Maclin to submit a "bill of costs by Affidavit" and scheduled a hearing to determine costs and attorney's fees. During the hearing on attorney's fees, the Board made an oral request that the trial court issue written findings and conclusions, which the court denied. The Board also moved to strike Maclin's submissions, which the court denied. The court determined that attorney's fees and costs were warranted, found Lay's hourly rate of $185 reasonable, and ordered that Lay be compensated for sixty-four hours, plus $100 in court costs, for a total fee of $11,940.

## DISCUSSION AND DECISION

### Issue One: Summary Judgment

On review of a trial court's decision to grant or deny summary judgment, we stand in the same position as the trial court. *GEICO Ins. Co. v. Rowell,* 705 N.E.2d 476, 480 (Ind.Ct.App.1999). Summary judgment is appropriate only if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Markley Enter., Inc. v. Grover,* 716 N.E.2d 559, 564 (Ind.Ct.App. 1999). Only if the movant sustains this burden does the burden shift to the opponent to set forth specific facts showing that there is a genuine issue of material fact. *Id.*

■ Once a party files his motion for summary judgment, the non-moving party has an obligation to respond within thirty days. Ind. Trial Rule 56(C). Additionally, Trial Rule 56(E) provides in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of his pleading,* but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(Emphasis added). If the non-movant fails to properly respond or designate evidence, and the moving party has shown that he is entitled to summary judgment, the trial court is obligated to enter summary judgment against the non-moving party. *Markley,* 716 N.E.2d at 564; *Seufert v. RWB Med. Income Properties I Ltd. P'ship,* 649 N.E.2d 1070, 1072 (Ind.Ct.App. 1995).

In this case, the Board neither filed a summary judgment response nor designated any evidence. As a result, we need only decide whether summary judgment is appropriate based upon the evidence Maclin designated. *Markley,* 716 N.E.2d at 564; *Seufert,* 649 N.E.2d at 1073, n. 1. Stated differently, we must determine whether Maclin, as the moving party, has made a prima facie showing that he is entitled to summary judgment. *See Markley,* 716 N.E.2d at 564. In making that determination, we are mindful that, like the trial court, we may not look beyond the evidence specifically designated to the trial court. *See Seufert,* 649 N.E.2d at 1072.

In his summary judgment motion, Maclin asserts that the Board violated Indiana's Open Door Law in three ways: (1) the Board's public notice of executive session violated Indiana Code Section 5–14–1.5–6.1 because it failed to identify by statutory reference the subject matter discussed; (2) the Board failed to maintain

memoranda of its executive sessions, and (3) the Board failed to certify memoranda of its executive sessions pursuant to section 6.1(d).[2] We address each claim in turn to determine whether Maclin made a prima facie showing that he is entitled to summary judgment.

The legislature passed the Indiana Open Door Law in 1977 with the intention that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. *Baker v. Town of Middlebury*, 753 N.E.2d 67, 70 (Ind.Ct. App.2001) (citing Ind.Code § 5–14–1.5–1), *trans. denied*. We are required to liberally construe the statute in order to give effect to the legislature's intention. *Id.* Moreover, all doubts must be resolved in favor of requiring a public meeting and all exceptions to the rule requiring open meetings must be narrowly construed. *Id.*

The Open Door Law permits executive sessions in certain specified instances, including for discussion of strategy with respect to initiation of litigation or litigation that is either pending or has been threatened specifically in writing. I.C. § 5–14–1.5–6.1(b)(2)(B). The statute further states that "[p]ublic notice of executive sessions must state the subject matter by specific reference to the enumerated instance or instances for which executive sessions may be held under subsection (b)." I.C. § 5–14–1.5–6.1(d).

In support of his summary judgment motion, Maclin attached as "Exhibit 1A" to his affidavit a copy of the Board's notice

for the October 25, 2000, executive session. The notice lists the following as issues to be discussed at the executive session: (A) FOI Request Letter, and (B) Legal Matters. The Board's notice does not comply with the Open Door Law because it fails to "state the subject matter by specific reference to the enumerated instance or instances for which executive sessions may be held under subsection (b)." *See* I.C. § 5–14–1.5–6.1(d).

Still, the Board argues that it substantially complied with the Open Door Law because it identified "legal matters" and "FOI requests," which could lead to litigation, as issues for discussion during the executive session. The Board's argument lacks merit. The statute is clear and unambiguous. *See Baker*, 753 N.E.2d at 70 (where words of statute are clear and unambiguous, we give them their plain, ordinary and unbridled meaning). Indiana Code Section 5–14–1.5–6.1 requires the Board to identify the subject matter *by specific reference* to subsection (b). The Board's October 25, 2000, public notice did not comply with this statutory requirement.[3] Summary judgment in favor of Maclin on this claim is appropriate.

Maclin also sought summary judgment on his claims that the Board had failed to maintain memoranda of its executive sessions and certify those memoranda as required by the Open Door Law. Indiana Code Section 5–14–1.5–6.1(d) provides in relevant part:

The requirements stated in section 4 [4] of this chapter for memoranda and min-

---

2. Maclin's claim that the Board failed to maintain memoranda of its executive sessions did not appear in his Complaint, nor did Maclin seek to amend his Complaint to include this claim. A review of Appellant's Appendix reveals that Maclin learned of this alleged violation in discovery. The Board, however, has not argued that Maclin's inclusion of this claim at the summary judgment

stage is improper, and we will not address that issue sua sponte.

3. The designated evidence also shows that the Board had no pending or impending litigation during this time.

4. Indiana Code Section 5–14–1.5–4 requires, in part, that a governing body keep memoranda containing specific information about its

utes being made available to the public is modified as to executive sessions in that *the memoranda and minutes must identify the subject matter considered by specific reference to the enumerated instance or instances for which public notice was given. The governing body shall certify by a statement in the memoranda and minutes of the governing body that no subject matter was discussed in the executive session other than the subject matter specified in the public notice.*

(Emphasis added). In support of his motion for summary judgment, Maclin attached to his affidavit a copy of Defendant's Response to Request for Production in which the Board states that it "is not required to compose memorandums [sic] of its executive session [sic] therefore no memorandum of such exist." This designated evidence is sufficient to show that the Board violated the Open Door Law by not maintaining memoranda of its executive sessions. Because the Board admitted that it does not maintain memoranda, the evidence also shows that the Board failed to certify "that no subject matter was discussed in the executive session other than the subject matter specified in the public notice" as required by subsection 6.1(d). Therefore, summary judgment was proper on Maclin's remaining two claims as well.

■ The final summary judgment issue to be resolved concerns the Board's assertion that the evidence Maclin designated is deficient. Specifically, the Board argues that Maclin's affidavit and the attached exhibits should be disregarded because the affidavit is not based on personal knowledge and does not contain the verification

language set forth in Indiana Trial Rule 11(B). In addition, the Board asserts that the exhibits attached to Maclin's affidavit are uncertified.

As an initial matter, the sole issue the Board raised during summary judgment argument was that Maclin's affidavit was not based on personal knowledge.[5] The Board did not argue to the trial court that the affidavit should be stricken for improper verification or that the attachments to the affidavit were not properly certified. As such, the Board has waived those arguments on appeal. *Van Winkle v. Nash,* 761 N.E.2d 856, 859 (Ind.Ct.App.2002) (failure to raise issue before trial court results in waiver of that issue).

■■ We review a trial court's decision to admit or exclude evidence for an abuse of discretion, and we will reverse such an exercise of discretion only when the decision is clearly against the logic and effect of the facts and circumstances. *Steuben County v. Family Development, Ltd.,* 753 N.E.2d 693, 696 (Ind.Ct.App.2001), *trans. denied.* Affidavits in support of a motion for summary judgment are governed by Indiana Trial Rule 56(E), which provides in relevant part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Here, Maclin's affidavit is minimal at best. The only statement of fact which appears in the affidavit is Maclin's factual assertion that the Board "does not main-

---

meetings. These memoranda are to be available to the public. Ind.Code § 5–14–1.5–4(c). In addition, any minutes of the meeting are to be open for public inspection and copying. *Id.*

5. As we have stated, the Board did not file a written response to Maclin's motion for summary judgment. But the Board did appear for the summary judgment hearing and orally moved to strike Maclin's affidavit at that time.

tain memorand[a] of its executive sessions...." The remaining substantive paragraph in the affidavit amounts to a legal conclusion. Still, whether Maclin had personal knowledge of the information contained in the affidavit is rendered moot by the Board's own admission that it violated the Open Door Law. In particular, the Board admitted in its Response to Request for Production that it did not compose memoranda of its executive sessions. And during the summary judgment hearing, the Board admitted that it had committed the "technical violations" Maclin alleged. As such, we conclude that the trial court did not abuse its discretion when it denied the Board's oral motion to strike Maclin's affidavit and that summary judgment in favor of Maclin was proper.

### Issue Two: Attorney's Fees

 The Board also argues that the trial court erred when it ordered the Board to pay Maclin $11,940 in attorney's fees and costs. We review the trial court's decision to award attorney's fees under an abuse of discretion standard. *Bacompt Systems, Inc. v. Ashworth*, 752 N.E.2d 140, 146 (Ind.Ct.App.2001), *trans. denied*. We will not reverse the trial court's decision to award fees unless the award is clearly against the logic and effect of the facts and circumstances. *Lynn v. Windridge Co-Owners Ass'n, Inc.*, 743 N.E.2d 305, 314 (Ind.Ct.App.2001), *trans. denied*.

 The Board asserts that the trial court's award of attorney's fees was erroneous because Maclin failed to comply with Indiana Code Section 5-14-1.5-7(f). In particular, the Board maintains that Maclin filed his Complaint without first receiving an informal inquiry response or advisory opinion from the public access

counselor. In addressing the Board's argument, we first turn to the statutes relevant to a trial court's determination of whether fees and costs are warranted by the Open Door Law.

Indiana Code Section 5-14-4-5 establishes the office of the public access counselor, and Indiana Code Section 5-14-4-10 sets forth the powers and duties of the public access counselor. Those powers and duties include:

\* \* \*

(5) To respond to informal inquiries made by the public and public agencies by telephone, in writing, in person, by facsimile, or by electronic mail concerning the public access laws.

(6) To issue advisory opinions to interpret the public access laws upon the request of a person or a public agency. However, the counselor may not issue an advisory opinion concerning a specific matter with respect to which a lawsuit has been filed under IC 5-14-1.5 or IC 5-14-3.

\* \* \*

*Id.* A person who alleges a violation of the Open Door Law has several reporting options. A person may file either a complaint or an informal inquiry with the public access counselor under Indiana Code Section 5-14-5-6.[6] If a formal complaint is filed, the public access counselor shall issue an advisory opinion on the complaint within thirty days. Ind.Code § 5-14-5-9. The statutes set forth no specific time period within which the counselor shall respond to an informal inquiry.

A person is not required to file a formal complaint with the Office of the Public

---

**6.** A person or public agency denied any right conferred by Indiana Code Section 5-14-1.5 may file a formal complaint with the counselor under the procedure prescribed by this chapter or may make an informal inquiry under Indiana Code Section 5-14-4-10(5). Ind.Code § 5-14-5-6.

Access Counselor before filing an action which alleges a violation of the Open Door Law. Ind.Code § 5–14–5–4. However, in order to be awarded fees and costs, a plaintiff must first seek and receive "an informal inquiry response or advisory opinion from the public access counselor." Ind.Code § 5–14–1.5–7(f). Specifically, Indiana Code Section 5–14–1.5–7(f) provides in relevant part:

> In any action filed under this section, a court shall award reasonable attorney's fees, court costs, and other reasonable expenses of litigation to the prevailing party if:
>
> (1) the plaintiff prevails; or
>
> (2) the defendant prevails and the court finds that the action is frivolous and vexatious.
>
> *The plaintiff is not eligible for the awarding of attorney's fees, court costs, and other reasonable expenses if the plaintiff filed the action without first seeking and receiving an informal inquiry response or advisory opinion from the public access counselor,* unless the plaintiff can show the filing of the action was necessary to prevent a violation of this chapter.

(Emphasis added).

Here, Maclin submitted what he called a "formal complaint" to Anne Mullin O'Connor, Indiana Public Access Counselor, before he filed his Complaint. In response, Counselor O'Connor sent a letter by facsimile to Maclin's counsel indicating that she had received his complaint and that the office would treat it as an informal inquiry because he failed to include a formal complaint form.[7] Additionally, Counselor O'Connor notified Maclin that "[f]or all intents and purposes, the impact is the same (if a lawsuit is filed and plaintiff prevails, attorneys fees and costs are awarded)." The Board argues on appeal that the letter from Counselor O'Connor does not constitute a "response" under Indiana Code Section 5–14–1.5–7(f). We disagree.

Again, this court endeavors to give statutory words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Peele v. Gillespie,* 658 N.E.2d 954, 958 (Ind.Ct.App.1995), *trans. denied.* Where the General Assembly has defined a word, this court is bound by that definition, even though it conflicts with the common meaning of the word. *Consolidation Coal Co. v. Indiana Dep't of State Revenue,* 583 N.E.2d 1199, 1201 (Ind. 1991). Where the legislature has used a word without definition, however, this court must examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, unless doing so would deprive the statute of its purpose or effect. *Id.*

The legislature has not defined the word "response" as it appears in Indiana Code Section 5–14–1.5–7(f) and, thus, we look to its plain, ordinary and usual meaning. "Response" is defined as "[a]n answer, a reply." Oxford English Dictionary (J.A. Simpson & E.S.C. Weiner eds.) (2nd ed. 1989). Contrary to the Board's assertions, the term "response" does not mean that the public access counselor must state affirmatively whether the public access laws have been violated. Instead, "response" requires only that the public access counselor acknowledge the informal inquiry.

Other statutes also address the public access counselor's response to public inquiries. Statutes which address the same subject matter are in pari materia and should be construed together to pro-

---

7. Indiana Code Section 5–14–5–11 provides that "[t]he public access counselor shall determine the form of a formal complaint filed under this chapter."

duce a harmonious result. *Clark v. Kenley,* 646 N.E.2d 76, 78 (Ind.Ct.App.1995), *trans. denied.* As we have discussed, Indiana Code Section 5–14–4–10(5) provides that the public access counselor has a duty to "respond to informal inquiries made by the public . . . in writing, in person, *by facsimile,* or by electronic mail concerning the public access laws." (Emphasis added). And Indiana Code Sections 5–14–5–7, 9 and 11 establish procedures for filing a "formal complaint," as opposed to an informal inquiry, and provide that the public access counselor shall issue an advisory opinion on a formal complaint within thirty days. Reading these statutes together, the public access counselor is only required to respond substantively to formal complaints in the form of an advisory opinion, while informal inquiries may be handled less formally and do not require a substantive response. In statutory construction, it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Schafer v. Sellersburg Town Council,* 714 N.E.2d 212, 217 (Ind.Ct.App.1999), *trans. denied.* Had the legislature intended that the public access counselor address every informal inquiry on the merits, it would have expressed that intention as it did when it required the public access counselor to issue an advisory opinion within thirty days following the filing of a formal complaint. *See* Ind.Code §§ 5–14–5–7, 5–14–5–9.

Additionally, Counselor O'Connor's response to Maclin's informal inquiry does not contemplate additional correspondence from the public access counselor. Instead, it is clear from the language of the response that no further communication from her office would be forthcoming. In particular, her response notifies Maclin that what he thought was a formal complaint would be considered as an informal inquiry and that "[f]or all intents and purposes, the impact is the same (if a lawsuit is filed and plaintiff prevails, attorneys fees and costs are awarded)." Counselor O'Connor's response is all that is required for Maclin to be entitled to attorney's fees. We conclude that Maclin did seek and receive an informal inquiry response which satisfies Indiana Code Section 5–14–1.5–7(f).

The Board also argues that the award of attorney's fees and costs was improper because Attorney Lay's Statement of Professional Services Rendered was not verified in compliance with Trial Rule 11(B). We cannot agree. Indiana Trial Rule 11(B) provides guidance as to what may constitute proper verification. *Jordan v. Deery,* 609 N.E.2d 1104, 1110 (Ind.1993) ("Although Trial Rule 11 provides one method for binding an affiant to his oath, compliance with its provisions is not required."). Any form of verification is sufficient if it serves the essential purpose of subjecting the affiant to the penalties for perjury. *Rhoads v. Carmel Bd. of Zoning Appeals,* 562 N.E.2d 752, 754 (Ind. Ct.App.1990). Here, Attorney Lay's Statement of Professional Services Rendered was verified by both Lay, Maclin and a notary public and was sufficient to subject Lay to penalties for perjury.

Finally, the Board contends that Attorney Lay improperly "prolonged the matter solely for his interest in building attorney fees." Specifically, the Board argued to the trial court that the parties had orally agreed to settle the case, but when the Board refused to pay the amount Lay requested in attorney's fees, Lay filed for summary judgment. The Board asserts that Lay's conduct violates the Indiana Rules of Professional Conduct and that the amount the trial court awarded was excessive. Again, we cannot agree.

In reviewing an award of fees and costs, we will not substitute our judgment for that of the trial court, nor will we

reweigh the evidence presented on appeal. *See Scott v. Randle*, 736 N.E.2d 308, 308–09 (Ind.Ct.App.2000). The Board has not convinced us that the trial court's ruling on attorney's fees and costs is "against the logic and effect of the facts and circumstances." *Lynn*, 743 N.E.2d at 314. The Board does not present cogent argument on its assertion that Lay's conduct violates the Rules of Professional Conduct and, moreover, the assertion is misplaced. *See* Preamble to Rules of Professional Conduct (remedy for alleged violation of Rules is invoking disciplinary process and purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons); *Cf. P.T. Barnum's Nightclub v. Duhamell*, 766 N.E.2d 729, 740–42 (Ind.Ct.App.2002) (Robb, J., concurring with separate opinion) (expressing concern for use of Rules of Professional Conduct as substantive basis for a cause of action). In addition, while Attorney Lay requested fees for a total of 88.5 hours spent on the case, the trial court evaluated the claim and based its award on 64 hours.[8] The Board's argument amounts to a request that we reweigh the evidence, which we cannot do on appeal. Thus, we cannot conclude that the trial court abused its discretion in awarding attorney's fees and costs to Maclin.

### CONCLUSION

In sum, we affirm the trial court's ruling on summary judgment and find no abuse of discretion in the fee award.

Affirmed.

ROBB, J. and BAILEY, J. concur.

---

8. Attorney Lay's Amended Statement of Professional Services Rendered shows that Lay spent 88.5 hours on the case, and Lay requested a total fee and cost award of $16,472.50.